COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
  
NO. 2-02-452-CR

  
STEVEN 
PHILLIPS                                                                  APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
------------
 
FROM 
THE 235TH DISTRICT COURT OF COOKE COUNTY
 
------------
 
OPINION
 
------------
I. 
Introduction
        A 
jury convicted Appellant Steven Phillips of capital murder, and the trial court 
sentenced him to life imprisonment. In two points on appeal, Phillips contends 
that the trial court erred by denying his motion to suppress because (1) his 
oral statements and all other evidence obtained therefrom were the direct result 
of an illegal arrest, and (2) his confession was obtained involuntarily after 
law enforcement made promises to induce him to confess. We will affirm.
II. 
Factual and Procedural Background
        For 
approximately five months, Phillips lived in a trailer in Cooke County with his 
girlfriend, Cheri Mahurin, and her eight-year-old son, Morgan. On Tuesday, 
October 2, 2001, Cheri drove to Pennsylvania to attend her grandfather’s 
funeral, leaving Phillips in charge of Morgan until Friday when her sister was 
to pick up Morgan from school. On the evening of October 4, 2001, after 
consuming several beers, Phillips awoke Morgan and drove him to a remote rural 
location known as Cooper’s Crossing. Shortly after arriving at the location, 
Phillips instructed Morgan to take off all his clothes and either sexually 
assaulted or attempted to sexually assault the boy. Thereafter, in order to 
prevent Morgan from telling anyone what had transpired, Phillips choked and 
drowned Morgan in a creek at Cooper’s Crossing. Phillips then left Morgan’s 
nude body floating in the creek and returned home.
        The 
following morning, in an attempt to cover up Morgan’s murder, Phillips went to 
Morgan’s school and told school officials that Morgan had forgotten his 
backpack that morning. After school officials made several attempts to locate 
Morgan, Patti Mercer, the principal at Morgan’s elementary school, called the 
police to report Morgan missing. Thereafter, Deputy Laren Hudson, a Cooke County 
Sheriff’s Deputy, arrived at the school and briefly questioned Phillips about 
when he last saw Morgan. Phillips maintained that he woke Morgan for school at 
6:05 a.m. that morning and then went back to bed.
        Phillips 
then agreed to ride with Deputy Hudson back to his residence to look for Morgan. 
Shortly thereafter, a team of sheriff’s deputies and search dogs began 
searching the area around Phillips’s residence. Throughout the afternoon, 
Phillips walked around the yard area, talked with family members, and answered 
questions from various law enforcement officials. Phillips also sat in law 
enforcement vehicles at various times throughout the day to stay warm; however, 
he was never forced to do so or restrained in any way.
        Later 
in the afternoon, at approximately 4:30 p.m., Phillips voluntarily accompanied 
Investigator Jimmy Burke and Investigator Brent Mast in a law enforcement 
vehicle to the Cooke County Sheriff’s Department to file a missing persons 
report and to give a statement. According to Investigator Burke, Phillips was 
not forced to go to the department, he was not in custody or restrained, and he 
did not request to drive his own vehicle.
        After 
arriving at the department, Phillips was left unattended in the front lobby 
while the investigators returned phone calls in their respective offices. During 
this time, Phillips was free to move around, to use the lobby phone, or to leave 
the premises. Approximately one hour after arriving at the sheriff’s 
department, Phillips signed an “Acknowledgment of Not Under Arrest,” 
recognizing that he understood that he was not in custody and was free to leave 
at any time. Thereafter, in a recorded statement beginning at approximately 5:30 
p.m., Phillips denied any knowledge as to Morgan’s whereabouts, once again 
claiming that he had not seen Morgan since waking him up for school that 
morning. After questioning Phillips for approximately one hour, the 
investigators decided to end the interview for a brief period of time to allow 
Phillips to get a drink or use the restroom.
        Phillips 
subsequently waited in the lobby of the sheriff’s department for approximately 
an hour-and-a-half while both investigators returned several phone calls. Once 
again, Phillips was left in the front lobby of the sheriff’s department for an 
extended period of time, during which he was unrestrained and unguarded.
        At 
approximately 8:10 p.m., the investigators began taking a second recorded 
statement from Phillips. At the commencement of this statement, Phillips again 
acknowledged that he understood that he was not under arrest and that he was 
giving the statement voluntarily. Approximately forty minutes into the second 
statement, Phillips requested a bathroom break. During the break, as 
Investigator Mast escorted him back from the restroom area,[1] 
Phillips indicated to Investigator Mast that he knew where Morgan was and would 
take them to him. According to Investigator Mast, prior to this incriminating 
statement, Phillips was free to terminate the interrogation or to leave the 
sheriff’s department at any time because there was no probable cause to arrest 
him. However, as a result of this statement, Mast considered Phillips as “in 
custody,” and therefore, he was no longer free to leave the premises.
        Immediately 
thereafter, at approximately 8:55 p.m., Investigator Burke informed Phillips 
that he was under investigation for Morgan’s disappearance and advised 
Phillips of his Miranda[2] rights. Phillips 
then indicated that he understood his rights and was knowingly and voluntarily 
waiving them. As a result, the investigators resumed Phillips’s second 
statement, wherein he confessed to murdering Morgan and leaving Morgan’s body 
in the creek at Cooper’s Crossing.
        At 
the conclusion of Phillips’s second statement, Investigator Burke, 
Investigator Mast, Phillips, and several other law enforcement officials 
traveled to Cooper’s Crossing to locate Morgan.[3]  
After arriving at the scene, Phillips was again advised of his rights and agreed 
to waive them. Then, in a third recorded statement, Phillips was videotaped 
leading Investigator Mast through the crime scene to Morgan’s body. 
Immediately after Morgan’s body was located, an arrest warrant was executed 
for Phillips, and he was transported to jail.
        On 
October 7, 2001, Investigator Mast took a fourth recorded statement from 
Phillips. After waiving his rights, Phillips discussed various details regarding 
Morgan’s murder, including admitting that he originally took Morgan to 
Cooper’s Crossing with the intent to sexually assault him. Phillips also 
admitted that he had been having sexual thoughts about Morgan for approximately 
four months prior to the murder and that he had recently cut out a peephole 
between the bathroom and the bedroom in his residence in order to watch Morgan 
bathe.
        On 
March 22, 2002, Phillips filed a motion to suppress, alleging that his 
statements and all the evidence derived from his statements were obtained as the 
result of an illegal arrest in violation of the Fourth, Fifth, and Fourteenth 
Amendments to the United States Constitution; article I, sections 9 and 10 of 
the Texas Constitution; and articles 14.03, 14.04, 38.22, and 38.23 of the Texas 
Code of Criminal Procedure.[4]  On October 4, 
2002, after hearing argument and evidence from both sides, the trial court 
denied Phillips’s motion to suppress. Thereafter, the trial court issued 
findings of fact and conclusions of law finding and concluding as a matter of 
law that (1) Phillips was not in custody until 8:55 p.m., wherein his rights 
were read to him and he was informed that he was under investigation for 
Morgan’s disappearance; and (2) each of Phillips’s oral statements was 
freely and voluntarily made with a sufficient understanding and waiver of his 
right against self-incrimination and without any compulsion or improper 
persuasion. As a result, during the trial on the merits, the State introduced 
Phillips’s oral statements and evidence derived therefrom into evidence, 
despite Phillips’s objections. On November 7, 2002, after considering all of 
the evidence and testimony presented, the jury found Phillips guilty of capital 
murder, and the trial court sentenced him to a mandatory life sentence. This 
appeal followed.
III. 
Standard of Review
        We 
review a trial court’s ruling on a motion to suppress evidence under a 
bifurcated standard of review. Carmouche v. State, 10 S.W.3d 323, 327 
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. 
App. 1997). In reviewing the trial court's decision, we do not engage in our own 
factual review. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 
1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, 
no pet.). At a suppression hearing, the trial judge is the sole trier of fact 
and judge of the credibility of the witnesses and the weight to be given their 
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). 
Therefore, we give almost total deference to the trial court's rulings on (1) 
questions of historical fact and (2) application-of-law-to-fact questions that 
turn on an evaluation of credibility and demeanor. Johnson v. State, 68 
S.W.3d 644, 652-53 (Tex. Crim. App. 2002); Best, 118 S.W.3d at 861-62. 
However, we review de novo a trial court’s rulings on mixed questions of law 
and fact if they do not turn on the credibility and demeanor of witnesses. Johnson, 
68 S.W.3d at 652.
IV. 
Illegal Arrest
        In 
his first point, Phillips contends that the trial court erred by denying his 
motion to suppress because his statements and all the evidence derived based 
upon his statements were obtained as the direct result of an illegal arrest. 
Specifically, Phillips complains that, because of the length his interrogation, 
the continual questioning, and the nature of his contact with law enforcement, 
beginning after he was transported to his residence by Deputy Hudson, he was 
unlawfully taken into “custody” at some time prior to being transported to 
the sheriff’s department by Investigators Burke and Mast.[5]  
Thus, he maintains that, given the circumstances leading up to his 
interrogation, a reasonable person would have believed that he was in custody 
because his freedom of movement was significantly restricted, and as a result, 
his statements and all the evidence obtained therefrom should have been 
suppressed. The State, however, maintains that Phillips was not taken into 
custody until 8:55 p.m. when he told Investigator Mast that he would take him to 
Morgan, at which point he was immediately advised that he was under 
investigation for Morgan’s disappearance, he was informed of his rights, and 
he indicated that he was knowingly and voluntarily waiving those rights. 
Therefore, the State contends that the trial court did not abuse its discretion 
in admitting his statements and the resulting evidence because they were 
lawfully obtained.
        Pursuant 
to article 15.22 of the Texas Code of Criminal Procedure, “[a] person is 
arrested when he has been actually placed under restraint or taken into custody 
by an officer . . . .” Tex. Code Crim. Proc. Ann. art. 15.22 (Vernon 1977). A person 
is in “custody” only if, under the circumstances, a reasonable person would 
believe that his freedom of movement was restrained to the degree associated 
with a formal arrest. Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. 
App. 1996); Cagle v. State, 23 S.W.3d 590, 592 (Tex. App.—Fort Worth 
2000, pet. ref’d) (op. on reh’g). The reasonable person standard presupposes 
an innocent person. Dowthitt, 931 S.W.2d at 254.
        The 
Texas Court of Criminal Appeals articulated four general situations that may 
constitute custody:
 
(1) 
when the suspect is physically deprived of his freedom of action in any 
significant way, (2) when a law enforcement officer tells the suspect that he 
cannot leave, (3) when law enforcement officers create a situation that would 
lead a reasonable person to believe that his freedom of movement has been 
significantly restricted, and (4) when there is probable cause to arrest and law 
enforcement officers do not tell the suspect that he is free to leave.

 
Id. 
at 255. With regard to the first through third situations, the restriction upon 
freedom of movement must amount to the degree associated with an arrest as 
opposed to merely an investigative detention. Id. In the fourth 
situation, the officers' knowledge of probable cause must be manifested to the 
suspect. Id. Such manifestation results when information substantiating 
probable cause is related by the officers to the suspect or by the suspect to 
the officers. Id. Situation four, however, does not automatically 
establish custody; rather, custody is established if the manifestation of 
probable cause, combined with other circumstances, would lead a reasonable 
person to believe he or she is under restraint to the degree associated with an 
arrest. Id.
        The 
determination of custody must be made on an ad hoc basis, after considering all 
of the circumstances. Shiflet v. State, 732 S.W.2d 622, 629 (Tex. Crim. 
App. 1985). Stationhouse questioning does not, in and of itself, constitute 
custody. Dowthitt, 931 S.W.2d at 255. However, the mere fact that an 
interrogation begins as non-custodial does not prevent custody from arising at 
some later point in time. Id. Specifically, police conduct during the 
encounter may cause a consensual inquiry to escalate into a custodial 
interrogation. Id.
        In 
addition, because the determination of custody depends on the objective 
circumstances of the interrogation, the subjective views harbored by either the 
interrogating officers or by the person being questioned are not controlling. Stansbury 
v. California, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529 (1994). In 
determining when custody attaches, courts may consider whether the suspect 
voluntarily arrived at the place of interrogation, the length of the 
interrogation, whether the suspect's requests to see relatives and friends are 
refused, and the degree of control exercised over the suspect. Xu v. State, 
100 S.W.3d 408, 413 (Tex. App.—San Antonio 2002, pet. filed); see also 
Dowthitt, 931 S.W.2d at 255-57. As a general rule, when a person voluntarily 
accompanies law enforcement to a certain location, even though he knows or 
should know that law enforcement suspects that he may have committed or may be 
implicated in committing a crime, that person is not restrained or “in 
custody.” Livingston v. State, 739 S.W.2d 311, 327 (Tex. Crim. App. 
1987), cert. denied, 487 U.S. 1210 (1988). More specifically, so long as 
the circumstances show that he is acting only upon the invitation, request, or 
even urging of law enforcement, and there are no threats, either express or 
implied, that he will be taken forcibly, the accompaniment is voluntary, and 
such person is not in custody. Anderson v. State, 932 S.W.2d 502, 505 
(Tex. Crim. App.1996), cert. denied, 521 U.S. 1122 (1997); Dancy v. 
State, 728 S.W.2d 772, 778 (Tex. Crim. App.), cert. denied, 484 U.S. 
975 (1987); Shiflet, 732 S.W.2d at 628.
        In 
the instant case, in order to determine whether Phillips was subject to an 
illegal arrest, we must first determine if Phillips was actually “arrested” 
at any point prior to incriminating himself at 8:55 p.m. See Chambers v. 
State, 866 S.W.2d 9, 19 (Tex. Crim. App. 1993), cert. denied, 511 
U.S. 1100 (1994). Because the issue of custody is a mixed question of law and 
fact, we will review de novo the trial court’s determination that Phillips was 
not in custody at any time prior to 8:55 p.m. Jeffley v. State, 38 S.W.3d 
847, 853 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).
        In 
considering the totality of the circumstances leading up to the interrogation, 
several factors tend to show that Phillips was not in custody until he 
incriminated himself at 8:55 p.m. The record reveals that Phillips initially 
came in contact with the police only after taking Morgan’s backpack to school 
in an effort to divert attention from himself before authorities realized that 
Morgan was missing. Thereafter, Phillips voluntarily agreed to assist law 
enforcement in searching for Morgan. During the period of time at his residence, 
Phillips was questioned by various officers in an attempt to gain information 
about Morgan and his potential whereabouts because Phillips was one of 
Morgan’s caretakers and the last person in contact with the child before his 
disappearance. From the viewpoint of an innocent person, such questioning would 
have appeared only investigatory, especially since law enforcement was unaware 
that a crime had actually been committed.
        In 
addition, while at his residence, Phillips was not restrained in any way or 
forbidden from leaving the premises. In fact, according to both investigators, 
he was walking around and talking to friends and family. The record also 
reflects that when Phillips rode to the sheriff’s department with the 
investigators, he did so voluntarily, unrestrained, and riding in the passenger 
seat of the vehicle. Thereafter, on at least two occasions after arriving at the 
station, Phillips was left unattended for extended periods of time in the lobby, 
with access to a nearby telephone and exit.
        Prior 
to beginning both the first and second statements, Phillips acknowledged, both 
orally and in written form, that he was not under arrest and that he was free to 
terminate the interview and leave the premises at any time if he so desired. 
However, as evidenced by the record, Phillips never asked to terminate the 
interview, to leave the premises, or to speak to anyone. Moreover, the length of 
time that Phillips was actually being interviewed at the department before 
incriminating himself was less than two hours, and even so, Phillips was given 
restroom breaks as needed. In addition, during the course of the questioning, 
Phillips had access to an unlocked door leading directly from the 
investigator’s office to the main lobby area. The record also indicates that 
as soon as probable cause was established linking Phillips to Morgan’s 
disappearance, he was immediately told that he was under investigation and 
advised of his rights.
        In 
his brief, Phillips references several comments made by both investigators in 
support of his contention that he was in custody prior to incriminating himself. 
However, after reviewing the complained-of comments in context with the entire 
interrogation, we are unpersuaded that based on those comments a reasonable 
person in Phillips’s situation would have felt that he or she was not at 
liberty to terminate the interrogation and leave, particularly in light of his 
multiple acknowledgments that he was not under arrest.
        Therefore, 
after carefully considering all of the circumstances surrounding Phillips’s 
interrogation, we conclude that a reasonable person in Phillips’s situation 
would not feel restrained to the degree associated with a formal arrest. As a 
result, we conclude that Phillips was not in custody at anytime prior to 8:55 
p.m. when he incriminated himself in Morgan’s disappearance. Accordingly, 
because Phillips was never “arrested” prior to 8:55 p.m., the trial court 
did not abuse its discretion by failing to suppress his statements and the 
evidence obtained therefrom. See Dancy, 728 S.W.2d at 778 (holding 
suspect not in custody until evidence linked the person to the offense); 
Turner v. State, 685 S.W.2d 38, 43 (Tex. Crim. App. 1985) (holding suspect 
not in custody until law enforcement realized the likelihood of the person’s 
involvement in the offense). We overrule Phillips’s first point.
V. 
Involuntary Confession
        In 
his second point, Phillips contends that the trial court erred by denying his 
motion to suppress because his confession was obtained involuntarily after law 
enforcement made promises to induce him to confess. In response, however, the 
State maintains that law enforcement never promised Phillips any immunity or 
benefit that would have induced him to confess falsely.
        Under 
Texas law, a suspect's confession may be used against him only when it is freely 
and voluntarily made without compulsion or persuasion. Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon Supp. 2004). A 
statement is not voluntary if there was “official, coercive conduct of such a 
nature that any statement obtained thereby was unlikely to have been the product 
of an essentially free and unconstrained choice by its maker.” Alvarado v. 
State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). The determination of the 
voluntariness of a confession depends on the totality of the circumstances 
surrounding the confession. Penry v. State, 903 S.W.2d 715, 748 (Tex. 
Crim. App.), cert. denied, 516 U.S. 977 (1995).
        Law 
enforcement personnel may not elicit confessions by making false promises. See 
Lynumn v. Illinois, 372 U.S. 528, 534, 83 S. Ct. 917, 920 (1963). 
However, before such a promise will render a confession inadmissible, the 
promise must be shown to have induced the confession. See Muniz v. 
State, 851 S.W.2d 238, 254 (Tex. Crim. App.), cert. denied, 510 U.S. 
837 (1993). A promise will render a confession involuntary only if it is (1) 
positive; (2) of some benefit to the suspect; (3) made or sanctioned by someone 
in authority; and (4) of such an influential nature that a defendant would speak 
untruthfully in response thereto. Creager v. State, 952 S.W.2d 852, 856 
(Tex. Crim. App.1997). Moreover, an improper inducement must be of an 
exceptional character before it will invalidate an otherwise voluntary 
confession. Espinosa v. State, 899 S.W.2d 359, 364 (Tex. App.—Houston 
[14th Dist.] 1995, pet. ref'd).
        In 
the instant case, Phillips points to the following statements by Investigator 
Mast as evidence that the investigators made false promises in order to induce 
him to confess:
  
If 
you went somewhere and left the kid there for a little bit by hi[m]self, I’m 
not going to arrest you for that. I’m not going to call Child Protective 
Services for that. . . . If you went and bought dope, I don’t care. . . . We 
don’t care if you’re cheating on your wife, if you’re doing dope . . . if 
you’re burglarizing stuff right now. We don’t care, see. What we care about 
is Morgan’s safety.

 
        Our 
review of the record reveals that at the time these statements were made there 
was no evidence that any crime had been committed. However, based on several 
inconsistencies in Phillips’s earlier recitation of Morgan’s disappearance, 
coupled with conflicting witness information, the investigators had reason to 
believe that Phillips was being untruthful about his whereabouts and activity 
the previous evening. Consequently, Investigator Mast was attempting to persuade 
Phillips to tell the truth about what he had done the previous night in order to 
assist them in locating Morgan. Nothing in these statements suggests that 
Phillips would be given any leniency for confessing, even falsely, to Morgan’s 
murder. See Janecka v. State, 937 S.W.2d 456, 466 (Tex. Crim. App. 1996), 
cert. denied, 522 U.S. 825 (1997).
        In 
addition, in support of his contention that the investigators made promises in 
order to induce him to confess, Phillips also references Investigator Mast’s 
statements, “[b]ecause we’re not trying to get you in trouble. . . . Because 
we’re here to help you. And you--you’re the guy who can help.” 
Specifically, he complains that these statements “unequivocally promised [him] 
he would not be harmed, but in fact helped, if he confessed.”
        However, 
as a general rule, non-specific offers to “help” a defendant will not render 
a confession invalid. See Dykes v. State, 657 S.W.2d 796, 797 (Tex. Crim. 
App. 1983). In the instant case, neither investigator specifically promised 
Phillips that he would be “helped” in any way by confessing to Morgan’s 
murder. See Garcia v. State, 919 S.W.2d 370, 388 (Tex. Crim. App. 1994) 
(op. on reh’g). As a result, the aforementioned statements are not of such 
character that would likely influence Phillips to confess untruthfully. See 
id. Consequently, we overrule Phillips’s second point.
VI. 
Conclusion
        Having 
overruled all of Phillips’s points on appeal, we affirm the trial court’s 
judgment.

  
                                                                  SUE 
WALKER
                                                                  JUSTICE

  
PANEL 
F:   DAUPHINOT, HOLMAN, and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
February 26, 2004
 


NOTES
1.  
According to Investigator Burke, the restrooms were located behind a restricted 
access door in order to keep the general public from using the facilities. As a 
result, Phillips had to be escorted to the restroom area by a person authorized 
to access the facilities.
2.  
Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).
3.  
According to Investigator Mast, it was necessary to take Phillips out to 
Cooper’s Crossing to locate the body because based on the nature of the area, 
a person “could walk past that body within ten or fifteen feet and not see 
it.”
4.  
U.S. Const. amend. IV, V, XIV; Tex. Const. art. I, §§ 9,10; Tex. Code Crim. Proc. Ann. arts. 14.03, 14.04, 38.22, 38.23 
(Vernon 1977 & Supp. 2004).
5. 
On appeal, Phillips does not appear to challenge law enforcement’s right to 
arrest him after he told them that he would take them to Morgan. See Tex. Code Crim. Proc. Ann. art. 14.03(a)(4) (Vernon Supp. 2004) 
(permitting an officer to arrest without a warrant any person who the officer 
has probable cause to believe has committed an assault resulting in bodily 
injury to a member of the person's family or household). Therefore, our inquiry 
will be limited to determining whether he was taken into custody without 
probable cause at any time prior to incriminating himself at 8:55 p.m.